No. 19,876.

O. P. BROOKS, *Appellant,* v. WALTER K. CAMPBELL and ELMER BEELER, *Appellees.*

SYLLABUS BY THE COURT.

1. *Partnership—Dissolution—Action for Accounting—Limitation of Action.* When a partnership business is closed out, a cause of action for an accounting and settlement arises between the partners, under an implied contract mutually and equally to share the profits and bear the burdens of the partnership.

2. SAME. A partnership business was closed out in April, 1908. An action for an accounting and settlement and for moneys due to one partner from the other partners was not begun until September, 1913. *Held,* that such action was barred by the statute of limitations. (Civ. Code, § 17, subdiv. 2.)

3. PARTNERSHIP—*Action for Accounting—Statute of Limitations Not Tolled by Action of One Partner.* A partnership of three members establish a business at Ardmore, Okla. The business was a failure,

and was closed out by the plaintiff as manager with the consent of the other partners. Two years and three months later plaintiff collected a claim against a railway company for loss of goods shipped by him to the other partners upon closing out the partnership business. Plaintiff voluntarily placed the sum collected to the credit of the defunct partnership. *Held,* that such voluntary payment did not interrupt the running of the statute of limitations in plaintiff's own favor.

Appeal from Montgomery district court; THOMAS J. FLAN-NELLY, judge. Opinion filed February 12, 1916. Affirmed.

*J. E. Brooks,* and *C. O. Buckles,* both of Sedan, for the appellant.

*Thomas E. Wagstaff,* and *S. P. Miles,* both of Independence, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: In October, 1907, the plaintiff and defendants formed a partnership for the purpose of conducting a plumbing and gas-fitting business in the city of Ardmore, Okla. By agreement of the partners, the plaintiff went to Ardmore to take charge of the business at a salary of $85 per month. His salary and all other expenses were to be paid out of the proceeds if the business, and the profits, if any, were to be shared equally. The business was a losing venture. The receipts for six months were $3000.10; the disbursements $3683.62; and certain other expenditures were borne by the plaintiff personally. The plaintiff closed out the business in April, 1908, and shipped the remaining goods on hand to the defendants, who had an independent partnership in other business elsewhere.

This action was brought on September 19, 1913, and the later amended petition set out the foregoing facts, and pleaded the state of the accounts between plaintiff and defendants, showing a balance due him, and alleging the existence of "some unsettled accounts." His petition continues: .

"That certain goods shipped to the defendant at the time said business was closed were lost and said firm had a claim against the Mo. Pac. Railway Company for the loss of said goods which claim the defendant Walter Campbell of said [independent] firm of Campbell and Beeler instructed this plaintiff to collect. That he proceeded to collect the claim but did not succeed therein until the first day of August, 1910,

14—97 KAN.

when said company paid $100.00 in settlement of such claim, which was placed to the credit of the firm of Brooks, Beeler & Campbell on the 1st day of August, 1910.

"That since the first day of August, 1910, each of said defendants have been absent from the state of Kansas at times for more than a total of 60 days."

The plaintiff prayed for a commission to examine the books and accounts of the firm, for a determination of the partners' several interests and for a judgment for the amount claimed to be due from his copartners.

The district court sustained a demurrer to the amended petition, and the case is here for review.

1. Was this action barred by the statute of limitations?

There is an implied obligation between general partners that on the termination of the partnership they will account to each other and settle and pay any balances due among themselves. To bring about such accounting and settlement a cause of action will lie. (*Norman v. Conn*, 20 Kan. 159; *Turner v. Otis*, 30 Kan. 1, 1 Pac, 19; *Clarke v. Mills*, 36 Kan. 393, 13 Pac. 569; 30 Cyc. 681, 713; 1 M. A. L., p. 762.) In the petition it was alleged that the partnership business was closed in April, 1908. This action was not begun until September 19, 1913, some five years and five months thereafter.

Unless the partnership business was unsettled, and we will consider that later, the plaintiff's cause of action for an accounting arose April, 1908, and was barred in April, 1911. If, as alleged, his partners owed the plaintiff a balance of money, it too was barred in April, 1911. (Civ. Code, § 17, subdiv. 2.)

If there were unsettled accounts, the statute would not begin to run until they were disposed of. (Bushnell, Limitations and Adverse Possession, §§ 57, 66, 67, 207, 208; 2 Wood on Limitations, 3d ed., § 211 and note.)

Here, so far as shown by the petition, the only item unsettled, that is, unpaid, was the claim against the railway company for a shipment of goods lost in transit. The plaintiff says that "Walter Campbell of the firm of Campbell & Beeler instructed the plaintiff to collect" that item. It should go without saying that the firm of Campbell & Beeler, an independent firm, had no interest in the affairs of the partnership under consideration, which was the firm of Brooks, Beeler & Campbell. But

laying aside that point as a technicality, let it be considered that Campbell, a partner of the Ardmore firm of Brooks, Beeler & Campbell, instructed the plaintiff, Brooks, to collect the claim against the Missouri Pacific railway. He did not authorize, nor can it be fairly said from the pleadings that he directed that the amount which might be collected from the railway company should be "placed to the credit" of the defunct firm of Brooks, Beeler & Campbell. It seems hardly fair to permit this voluntary payment by Brooks in 1910 to the defunct firm to interrupt the running of the statute of limitations in his own favor. (*Hancock v. Cook*, 35 Mass. 30.) It would be stretching language unduly to characterize the railway company as a "customer" of the defunct firm.

We have examined the authorities cited by appellant. The first was the case of *Green v. Williams*, 21 Kan. 64, which was largely one of agency, and it was properly held that the statute did not run because there was no demand and refusal to pay and because the agent lived in another state.

The other case cited by appellant (*Benoist et al. v. Markey, Tutor, et al.*, 25 La. Ann. 59) is much more to the point. There the firm of Benoist, Shaw, Murphy & Newman had formed a partnership in 1859. Its business was ruined by the civil war, and there was nothing done towards a settlement of the partnership business until 1866, when suit was begun and a receiver appointed upon the application of the parties. Litigation of several years' duration ensued. This was a plain case where the statute should not be held to begin to run until a settlement of the partnership affairs had been effected and until the partners could have an opportunity to commence proceedings under the judgment settling the respective rights of the liquidating partners.

Other cases holding that the statute does not under all circumstances begin to run on the dissolution of the partnership are *Holloway v. Turner*, 61 Md. 217, *Jordan v. Miller and als.*, 75 Va. 442, and *Riddle v. Whitehill*, 135 U. S. 621. They relate to partnerships being wound up in due course, realizing assets, satisfying debts, etc. Obviously no statute of limitations would run in such cases.

There is, however, apparently no end of authority for holding that the cause of action for accounting and settlement be-

tween partners arises on the dissolution of the partnership, or in such a case as pleaded by appellant, when "with the consent of the defendants (his partners) he closed out the business when it was found to be unprofitable and plaintiff shipped to the defendants the stock of goods remaining on hand when said business was discontinued." Some of these authorities which we have examined in detail are: *Adams v. Taylor*, 14 Ark. 62; *Wilhelm v. Caylor, Ex'r of Riael*, 32 Md. 151; *Codman v. Rogers*, 27 Mass. 112; *Atwater v. Fowler*, 1 Edw. Ch. (N. Y.) 417; *Murray v. Coster*, 20 Johns. (N. Y.) 576; *Appleby v. Brown*, 24 N. Y. 143; *Coleman v. Second Avenue R. R. Co.*, 38 N. Y. 201; *Dwinelle v. Edey*, 102 N. Y. 423, 7 N. E. 422; *Gray v. Green*, 125 N. Y. 203, 206, 26 N. E. 253; *Coalter v. Coalter*, 1 Rob. (Va.) 79; Angell on Limitations, § 69, and Wood on Limitations, 3d ed., § 211.

From the foregoing we must hold that the cause of action for the accounting and settlement on the implied obligation of partners arose when the partnership business was closed out in 1908, and an action thereon filed in 1913 was barred by the statute of limitations (Civ. Code, § 17, subdiv. 2), and the voluntary payment to the defunct partnership in 1910 by the plaintiff did not interrupt in his own favor the running of the statute (52 L. R. A. 707, note 3).

The demurrer was properly sustained, and the judgment is affirmed.